**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

---

VICKIE M. STRINGER,

    Plaintiff,

  -against-

PENGUIN RANDOM HOUSE LLC,

    Defendant.

Case No. 1:25-cv-09953-AS

MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

JURY TRIAL DEMANDED

---

Vickie M. Stringer

Plaintiff, Pro Se

3124 Genevieve Drive

Columbus, Ohio 43219

Tel: (614) 961-5117

Dated: July 27, 2026

1

## PRELIMINARY STATEMENT

Defendant Penguin Random House LLC ("PRH") asks this Court to dismiss a straightforward commission dispute by mischaracterizing the very contracts it attached to its own motion. Those contracts—which PRH incorporated by reference and submitted as Exhibits B, C, and D to the Leish Declaration—do not merely "direct PRH where to send money owed to the authors," as PRH contends. They create an independent, vested commission right in Plaintiff Vickie M. Stringer as the designated literary agent.

The 2005 and 2006 Whitaker Contracts explicitly provide that Stringer is "entitled to receive and/or retain fifteen percent (15%) of gross monies paid to the Author," that "all monies payable to Author and Agent shall be paid directly to Agent," and that PRH may pay the Author directly "only with the express written consent of the Agent." These provisions—which vest a commission entitlement, mandate payment routing, confer veto power over direct-to-author payments, and survive termination of the underlying agreement—are not mere convenience mechanisms. They create enforceable rights. PRH's own conduct confirms this: PRH filed IRS Forms 1099-MISC in Stringer's name—not in the authors' names—for eleven consecutive years, thereby acknowledging under penalty of perjury that Stringer was the payee of record.

PRH's remaining arguments fare no better. Its statute-of-limitations defense ignores that PRH's own spreadsheet and IRS Forms 1099-MISC demonstrate ongoing royalty income from 2014 through 2024—each instance of nonpayment a discrete breach generating its own timely claim. PRH's fraudulent concealment of payment records—by producing a spreadsheet containing check data it later admitted it could not independently verify—tolls the statute on older claims. Its attack on the fraud count mischaracterizes the very email PRH submitted as Exhibit F, in which PRH's own employee admits the bank cannot produce the checks listed in the October 2024 Spreadsheet. And its challenge to the Section 7434 claim contradicts the IRS instructions PRH itself cites: those instructions require reporting amounts actually "paid" to an agent—yet Stringer alleges, and PRH does not dispute at this stage, that these amounts were never paid to her. Reporting income a payee never received is the definition of a fraudulent information return.

## STATEMENT OF FACTS

Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 19 of the First Amended Complaint ("FAC"), which are accepted as true for purposes of this motion. The following facts, drawn from the FAC and from PRH's own exhibits, are particularly relevant.

### The Contracts and the Agency Clauses

Plaintiff served as literary agent for authors Tu-Shonda Whitaker and Nikki Turner, negotiating three publishing contracts with PRH's predecessor, Random House. FAC ¶¶ 7-9. PRH attached the contracts as Exhibits B, C, and D to the Leish Declaration, and all three are incorporated by reference into the FAC. FAC ¶ 10.

Paragraph 24 of each Whitaker Contract provides that Stringer is "entitled to receive and/or retain fifteen percent (15%) of gross monies paid to the Author hereunder but all monies payable to Author and Agent shall be paid directly to Agent for distribution to Author." Leish Decl. Ex. C ¶ 24; Ex. D ¶ 24. The clause further provides that "payments may be made by Random House directly to the Author only with the express written consent of the Agent," and that "[t]he provision of this paragraph shall survive termination of this Agreement." *Id.* The Turner Contract (Ex. B) directs 6.25% of sums "due and payable to the Author" to Triple Crown Management, "Attn: Vickie M. Stringer." Leish Decl. Ex. B ¶ 24.

### PRH's Eleven-Year Course of Dealing Confirms the Agent Relationship

PRH's conduct over more than a decade is inconsistent with its litigation position that Stringer has no enforceable rights. PRH corresponded with Stringer in her capacity as agent, maintained internal records identifying her as agent, and—critically—filed IRS Forms 1099-MISC in Stringer's individual name from 2014 through 2024. FAC ¶ 12. A Form 1099-MISC is a sworn statement to the Internal Revenue Service identifying the payee of income. By filing these returns in Stringer's name, PRH represented to the IRS—under penalty of perjury—that Stringer was the person to whom it owed and paid income under the contracts. PRH cannot now disclaim before this Court the very relationship it affirmed to the IRS for eleven consecutive years.

3

**The Fabricated Payment Record**

In August 2024, Stringer requested payment records from PRH's Deputy General Counsel, Matthew Martin, Esq. FAC ¶ 15. On or about October 11, 2024, PRH produced a spreadsheet titled "Stringer Payments.xlsx" (the "October 2024 Spreadsheet") listing specific check numbers, issue dates, encashment dates, Chase Bank account numbers, and dollar amounts purporting to document payments to Stringer. FAC ¶ 15. Stringer's bank records show no corresponding deposits for any of these entries. FAC ¶ 16.

On August 1, 2025, a PRH employee wrote in an internal email (on which Stringer was copied) that "our bank doesn't keep copies of checks in their system that far back so we cannot provide copies of the checks." FAC ¶ 16; Leish Decl. Ex. F. This admission means that the specific check numbers and encashment dates listed in the October 2024 Spreadsheet cannot be independently verified—yet PRH produced this unverifiable data as proof of payment. PRH cannot use the spreadsheet as both a sword (to claim it paid Stringer) and a shield (to avoid producing the underlying checks). *See Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (a party may not rely on evidence it is unable or unwilling to substantiate).

**The Fraudulent 1099 Filings**

IRS Wage and Income Transcripts obtained during an October 2025 audit revealed that PRH filed Forms 1099-MISC reporting the following amounts as paid to Stringer: $474.92 (2014); $380.00 (2015); $427.00 (2016); $186.00 (2017); $230.00 (2018); $146.01 (2019); $64.30 (2020); $128.00 (2021); $0.00 (2022); $19.00 (2023); $82.29 (2024). FAC ¶ 17. Stringer alleges she never received any of these amounts. FAC ¶ 28. These amounts bear no reasonable relationship to a fifteen percent commission on the advances and subsidiary-rights income generated by the contracts at issue. FAC ¶ 17.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor." *Matson v. Board of Education*, 631 F.3d 57, 63 (2d Cir. 2011). A complaint survives when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausibility" does not require probability; it requires only "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Pro se complaints must be construed liberally "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This solicitude extends to construing allegations generously, even where the plaintiff uses imprecise language or cites erroneous authority. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Where contract language is susceptible to more than one reasonable interpretation, the ambiguity must be resolved in the nonmovant's favor at the pleading stage. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004). A court may not resolve factual disputes on a motion to dismiss. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

## ARGUMENT

### POINT I

### STRINGER HAS STANDING TO SUE FOR BREACH OF CONTRACT

PRH's lead argument—that Stringer lacks standing because she is "neither a party nor a third-party beneficiary"—fails for four independent reasons: (1) the contract language creates a direct commission entitlement; (2) PRH's principal authority is distinguishable; (3) PRH's own eleven-year course of dealing estops it from denying the agent relationship; and (4) at minimum, the contract language is ambiguous and must be construed in Plaintiff's favor at this stage.

**A. The Whitaker Contracts Create a Direct Commission Entitlement**

Paragraph 24 of each Whitaker Contract contains four provisions that, individually and collectively, create an independent, enforceable commission right:

*First*, Stringer is "entitled to receive and/or retain fifteen percent (15%) of gross monies paid to the Author." Leish Decl. Ex. C ¶ 24; Ex. D ¶ 24. The word "entitled" is a term of right that vests an affirmative commission entitlement upon each payment event. It is not a payment routing instruction. If PRH intended merely to designate a mailing address, it would have written "payments shall be sent to"—not "[Agent] is entitled to receive and/or retain." The word "retain"

is particularly significant: it authorizes Stringer to keep the commission from funds passing through her, presupposing that she has an independent right to the funds.

*Second*, "all monies payable to Author and Agent shall be paid directly to Agent." *Id.* The conjunctive phrase "Author and Agent" identifies Stringer as a co-payee alongside the Author. If Stringer were a mere conduit, the clause would read "monies payable to the Author shall be sent care of Agent." The word "payable" denotes an obligation owed to both parties.

*Third*, "payments may be made by Random House directly to the Author only with the express written consent of the Agent." *Id.* This veto power is dispositive. An incidental beneficiary has no power to prevent the obligor from performing its obligation to the obligee. A party that can block payments to the principal contractual counterpart possesses an independent enforceable right—not a mere expectancy. *See Restatement (Second) of Contracts* § 302 cmt. d (distinguishing intended from incidental beneficiaries by whether the promisee intends to give the beneficiary the benefit of the promised performance).

*Fourth*, "[t]he provision of this paragraph shall survive termination of this Agreement." *Id.* A survivability clause demonstrates that the contracting parties intended Stringer's commission right to endure beyond the termination of the underlying agreement. A payment convenience has no need to survive; a vested right does. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 197-98 (2d Cir. 2018) (contract provisions intended to benefit third parties directly create enforceable rights).

Drawing all reasonable inferences in Plaintiff's favor, this language plausibly creates an enforceable obligation running from PRH to Stringer. Whether it ultimately establishes a direct contractual obligation, a third-party beneficiary right, or an implied-in-fact contract is a factual question that cannot be resolved on a motion to dismiss. *Eternity Global*, 375 F.3d at 178.

### B. *Vigliano* **Is Distinguishable**

PRH relies heavily on *Vigliano Associates, Ltd. v. Gaines*, 2024 WL 3024919 (Sup. Ct. N.Y. Co. June 12, 2024), but that case is distinguishable in every material respect. The *Vigliano* agent received only 7.5% of payments, had no veto power over direct-to-author payments, and the court found "nothing in the agreement even suggests that the parties intended to give the plaintiff the right to enforce the contract." *Id.* at *5. Here, the Whitaker Contracts grant Stringer

15%, mandate that all payments flow through her, expressly prohibit PRH from paying the Author without Stringer's written consent, and include a survivability clause. The contract language here does precisely what the *Vigliano* court found lacking—it "suggests that the parties intended to give the [agent] the right to enforce the contract."

Moreover, the appellate division in *Vigliano* affirmed "on other grounds," *Vigliano Assocs., Ltd. v. Gaines*, 235 A.D.3d 519, 229 N.Y.S.3d 11 (1st Dep't 2025)—not on the third-party beneficiary analysis. The trial court's reasoning on this issue was not adopted on appeal and carries limited persuasive weight.

### C. PRH Is Estopped from Denying the Agent Relationship

Even if the contract language were ambiguous, PRH's own conduct estops it from denying Stringer's status. PRH filed IRS Forms 1099-MISC in Stringer's individual name—not in the authors' names, not in Triple Crown's name—for eleven consecutive years (2014-2024). FAC ¶ 12. A Form 1099-MISC is a sworn statement to the IRS identifying the payee of income. By filing these returns, PRH represented under penalty of perjury that Stringer was the person to whom it owed income under these contracts. *See Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) (a party may be estopped from taking a position inconsistent with its prior conduct where the other party relied to her detriment).

PRH also corresponded with Stringer in her capacity as agent and maintained internal records identifying her as agent of record. FAC ¶ 12. Having treated Stringer as the direct payee for over a decade, PRH cannot now disclaim the very relationship it affirmed to the federal government.

### D. The Turner Contract Claim Is Viable

PRH argues that Stringer has no standing under the Turner Contract because the 6.25% payment is directed to Triple Crown Management. But the contract itself identifies the recipient as Triple Crown Management "Attn: Vickie M. Stringer." Leish Decl. Ex. B ¶ 24. Stringer is the founder, sole principal, and alter ego of Triple Crown Management. FAC ¶ 3. Moreover, PRH filed the 1099s in Stringer's individual name—not in Triple Crown's name—confirming that PRH treated Stringer personally as the payee. At the pleading stage, Stringer has plausibly

alleged standing. *See Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 420 (2d Cir. 2015) (standing questions resolved in plaintiff's favor at pleading stage).

### E. The Citation Issue Does Not Undermine the Complaint's Plausibility

Plaintiff acknowledges that two cases cited in the FAC—Greene v. Harlequin Enterprises Ltd. and Lampack Agency, Inc. v. Martha Kaplan Agency, Inc.—contain erroneous citations. Plaintiff takes responsibility for this error. However, erroneous case citations do not render a complaint implausible. The legal proposition these citations were offered to support—that a publisher's express contractual obligation to pay an agent's commission creates an enforceable right—is supported by the contract language itself, the Restatement (Second) of Contracts § 302, and the authorities cited in this opposition. A pro se complaint is evaluated on the plausibility of its factual allegations, not the accuracy of its legal citations. *Triestman*, 470 F.3d at 474-75 ("it is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest"). The Court should assess the merits of Stringer's claims on the strength of her factual allegations and the contract language, not on citation errors.

### POINT II

### THE BREACH OF CONTRACT AND UNJUST ENRICHMENT CLAIMS ARE TIMELY

### A. Each Nonpayment Is a Discrete, Independently Timely Breach

PRH's statute-of-limitations argument assumes that all obligations under the contracts were satisfied decades ago. PRH's own documents disprove this assumption.

The FAC alleges that each failure to remit Stringer's commission upon receipt of royalty or subsidiary-rights income constitutes a discrete breach accruing at the time of that receipt. FAC ¶ 19. This is consistent with well-settled New York law: where a contract requires periodic payments, each missed payment is a separate breach with its own statute of limitations. *Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606, 611 (1979); *see also Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 403 (1993) ("each breach of a continuing obligation gives rise to a new claim").

PRH's own spreadsheet (Leish Decl. Ex. E) documents royalty payments on the contracts from 2004 through at least 2022. PRH's own 1099s report income attributed to Stringer for every

year from 2014 through 2024. FAC ¶ 17. Under the six-year statute of limitations for contract claims, N.Y. C.P.L.R. § 213(2), any commission obligation arising after November 2019 is timely. PRH's own filings demonstrate at least five years of reportable income (2020-2024) well within the limitations period.

### B. Fraudulent Concealment and the Discovery Rule Toll Older Claims

Even as to claims arising before November 2019, PRH's affirmative acts of concealment toll the statute. Under New York law, where a defendant's affirmative conduct prevents the plaintiff from discovering the wrong, equitable tolling applies. *Simcuski v. Saeli*, 44 N.Y.2d 442, 449 (1978); *Kaufman v. Cohen*, 307 A.D.2d 113, 122 (1st Dep't 2003).

PRH's concealment is not passive—it is affirmative. PRH maintained exclusive control over its payment records. When Stringer requested those records, PRH produced a spreadsheet containing specific check numbers and encashment dates that PRH later admitted it could not independently verify. FAC ¶¶ 15-16. PRH filed 1099s year after year reporting income to Stringer without actually paying her. FAC ¶¶ 17, 28. And PRH's employee acknowledged in writing that the bank cannot produce the underlying checks. These are precisely the kind of "affirmative act[s] of concealment" that toll the statute under New York law. *Simcuski*, 44 N.Y.2d at 449.

Plaintiff could not reasonably have discovered the full extent of Defendant's nonpayment before October 2025, when IRS Wage and Income Transcripts—obtained during an IRS audit—first revealed the scope and pattern of PRH's challenged 1099 filings. FAC ¶ 19. Until that point, Plaintiff had no independent access to the information PRH exclusively controlled.

### C. The Fraud Claim Has Its Own Limitations Period

The fraud claim is independently governed by N.Y. C.P.L.R. § 213(8), which provides the later of six years from the fraud or two years from the date the plaintiff discovered or could reasonably have discovered the fraud. Stringer discovered the full extent of the challenged 1099 filings in October 2025. FAC ¶ 19. This action, filed in November 2025, is timely under either measure. The § 7434 claim is likewise timely under its own six-year statute. 26 U.S.C. § 7434(c); *see Koch v. Christie's Int'l PLC*, 699 F.3d 141, 153-55 (2d Cir. 2012) (six years from filing or one year from discovery).

## POINT III

## THE UNJUST ENRICHMENT CLAIM IS PROPERLY PLED IN THE ALTERNATIVE

Federal Rule of Civil Procedure 8(d)(2) expressly permits a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically." The Second Circuit has held that where there is "a bona fide dispute as to the existence of a contract or the application of a contract to the dispute in question," unjust enrichment may be pled in the alternative. *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013).

PRH's own motion creates precisely that dispute. PRH's lead argument is that Stringer is neither a party to the contracts nor a third-party beneficiary with enforceable rights. PRH Mem. at 6-13. Having taken the position that no valid contract governs Stringer's claims, PRH cannot simultaneously argue that the existence of those same contracts bars her alternative unjust enrichment claim. That is the definition of a "bona fide dispute as to the existence of a contract." *Nakahata*, 723 F.3d at 197; *see also Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) (permitting alternative unjust enrichment claim where contract enforceability disputed).

The cases PRH cites—*Corsello*, *E.J. Brooks*, and *In re 305 E. 61st St. Grp. LLC*—are inapposite because they involve situations where both parties agreed a valid contract governed their dispute. Here, the parties fundamentally disagree about whether an enforceable contractual obligation exists. Dismissal of the alternative claim is premature.

## POINT IV

## THE FRAUDULENT MISREPRESENTATION CLAIM IS ADEQUATELY PLED

### A. The FAC Satisfies Rule 9(b)

The FAC identifies with specificity: (1) the fraudulent instrument—the October 2024 Spreadsheet, titled "Stringer Payments.xlsx," listing specific check numbers, issue dates, encashment dates, Chase Bank account numbers, and dollar amounts, FAC ¶ 15; (2) the person responsible—Matthew Martin, Esq., Deputy General Counsel of PRH, who produced the spreadsheet on behalf of Defendant, FAC ¶ 15; (3) when—on or about October 11, 2024, in response to Stringer's August 2024 request for payment records, FAC ¶ 15; and (4) why the representations are fraudulent—Stringer's bank records show no corresponding deposits, and

PRH's own employee subsequently acknowledged in writing that PRH's bank does not retain copies of the referenced checks, FAC ¶ 16. This satisfies the who, what, when, where, and why required by Rule 9(b). *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

### B. PRH Cannot Use the Spreadsheet as Both Sword and Shield

PRH asks this Court to credit the October 2024 Spreadsheet as proof that payments were made to Stringer. PRH Mem. at 8. But PRH's own exhibit—the Bartolmucci email (Leish Decl. Ex. F)—states that "our bank doesn't keep copies of checks in their system that far back so we cannot provide copies of the checks." PRH cannot rely on the spreadsheet as evidence of payment while simultaneously admitting it cannot produce the underlying checks the spreadsheet purports to document. A party that produces detailed payment records and then admits it has no way to verify them has, at a minimum, created a triable issue of fact. At the motion-to-dismiss stage, the Court must accept Stringer's allegation that these payments were never made. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (court may not resolve factual disputes on a motion to dismiss).

### C. Scienter, Reliance, and Independent Damages Are Adequately Pled

Scienter may be alleged generally under Rule 9(b). Fed. R. Civ. P. 9(b). The pattern of conduct—providing unverifiable data in response to a payment demand, by a sophisticated publisher with exclusive control over its own records, at a time calculated to delay the agent's pursuit of her claims—supports a strong inference of fraudulent intent. FAC ¶ 26.

Reliance is reasonable where the defendant has exclusive possession of the relevant information. *DDJ Mgmt., LLC v. Rhone Grp. LLC*, 15 N.Y.3d 147, 154 (2010). Stringer had no independent means to verify whether checks listed in PRH's internal spreadsheet had been issued or cashed. Her reliance on PRH's own records was not only reasonable—it was the only option available to her.

The FAC alleges damages independent of the breach claim: (1) a seven-month delay in pursuing her commission claims while she relied on PRH's representations that payments had been made, FAC ¶ 26; and (2) IRS audit costs, interest, and penalties incurred as a direct result of the discrepancies between the income PRH reported to the IRS and the income Stringer actually received, FAC ¶ 26. These audit-related costs are not damages flowing from the underlying

nonpayment—they are damages flowing from PRH's misrepresentation about payment and its fraudulent 1099 filings. They are independently cognizable. *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996) (punitive damages available for fraud involving egregious conduct).

## POINT V

### THE SECTION 7434 CLAIM IS ADEQUATELY PLED

#### A. PRH Reported Amounts Stringer Never Received

The core allegation is straightforward: PRH filed Forms 1099-MISC with the IRS reporting specific dollar amounts as "paid" to Stringer, when she never received those amounts. FAC ¶ 28. PRH's defense—that the reported amounts are "entirely consistent with royalty payments earned by the authors," PRH Mem. at 24—misses the point entirely. Consistency with what the authors earned is irrelevant if the amounts were never paid to the person identified on the return as the payee.

The IRS instructions PRH itself cites are instructive. Box 2 of Form 1099-MISC requires reporting "the gross royalties … paid by a publisher directly to an author or literary agent." PRH Mem. at 24 (emphasis in original). The operative word is "paid." If PRH did not actually pay these amounts to Stringer—as Stringer alleges and as must be accepted as true at this stage—then reporting them as "paid" on a Form 1099-MISC is, by definition, a fraudulent information return within the meaning of 26 U.S.C. § 7434(a).

#### B. The Box Classification Supports Stringer's Claim

Stringer's commission is compensation for professional services as a literary agent—not royalties on intellectual property she owns. FAC ¶ 18. Stringer holds no copyright in any of the works at issue. FAC ¶ 18. Classifying agent commissions as "royalties" in Box 2 rather than nonemployee compensation in Box 7 mischaracterizes the nature of the payment and, as Stringer alleges, was designed to evade the IRS matching systems that would link the income to Stringer's return as earned professional compensation. FAC ¶ 18.

#### C. Willfulness Is Plausibly Alleged

The Second Circuit has held that "willfulness" under § 7434 carries its ordinary meaning: a voluntary, intentional violation of a known legal duty. *Katzman v. Essex Waterfront Owners*

*LLC*, 660 F.3d 565, 568 (2d Cir. 2011). The FAC alleges an eleven-year pattern (2014-2024) in which PRH: (1) filed 1099s reporting income to Stringer she never received; (2) used Box 2 (Royalties) rather than Box 7 (Compensation); and (3) continued filing year after year despite knowing it was not paying the reported amounts. FAC ¶¶ 17-18, 28. A sophisticated commercial publisher that files sworn tax forms year after year reporting income to a person it knows it is not paying acts willfully.

PRH's argument that the amounts are "small" and therefore implausibly fraudulent, PRH Mem. at 26, is a non-sequitur. Congress enacted § 7434 with a minimum statutory penalty of $5,000 per fraudulent return precisely because the harm—tax liability, audit exposure, compliance costs, and reputational damage—is disproportionate to the dollar amounts reported. 26 U.S.C. § 7434(b). The "smallness" of the reported amounts, if anything, underscores the implausibility of PRH's position: why would a sophisticated publisher file 1099s reporting trivial amounts to an agent it claims has no contractual relationship, unless it was doing so to create a paper trail designed to obscure its failure to pay commissions actually owed?

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied in its entirety.


Dated: July 27, 2026


Respectfully submitted,

/s/ Vickie M. Stringer
Vickie M. Stringer
Plaintiff, Pro Se
3124 Genevieve Drive
Columbus, Ohio 43219
Tel: (614) 961-5117

**EXHIBIT 1**

**Responsive Non-Argumentative Chart**

**Pursuant to Individual Practices § 8(G)(i)**

**RESPONSIVE EXHIBIT 1**

Pursuant to Judge Subramanian's Individual Practices § 8(G)(i), the following chart identifies, for each element Defendant contends has not been plausibly alleged, the specific FAC paragraphs that plausibly allege those elements.

**COUNT I – BREACH OF CONTRACT**

| # | Legal Element | FAC Paragraphs Plausibly Alleging Element |
|---|---------------|-------------------------------------------|
| 2 | Contract intended for plaintiff's direct benefit | FAC ¶¶ 7-11, 13-14, 21. Contracts designate Stringer as "sole and exclusive agent," state she is "entitled to receive and/or retain" 15%, mandate all payments flow through her, prohibit direct payments without consent, survive termination. Leish Decl. Ex. C ¶ 24; Ex. D ¶ 24. PRH's 1099s in Stringer's name (FAC ¶ 12) confirm she was treated as direct payee. |
| 3 | Benefit sufficiently immediate, not incidental | FAC ¶¶ 11, 13-14, 21. Veto power, vesting language, survivability clause, and eleven-year course of dealing demonstrate immediate benefit. Commission vests upon each payment event. |

**COUNT III – FRAUDULENT MISREPRESENTATION**

| # | Legal Element | FAC Paragraphs Plausibly Alleging Element |
|---|---------------|-------------------------------------------|
| 1 | Material false representation | FAC ¶¶ 15-16, 26. October 2024 Spreadsheet with specific check numbers, dates, bank accounts, amounts. Bank records show no deposits. PRH employee confirmed bank cannot produce checks (Leish Decl. Ex. F). |
| 2 | Knowledge of falsity / intent to defraud | FAC ¶¶ 16, 26. Sophisticated publisher with exclusive control produced unverifiable data; employee acknowledged bank doesn't retain checks; timing (response to payment demand) supports intent to induce abandonment of claims. |
| 3 | Reasonable reliance | FAC ¶ 26. PRH had exclusive control over payment records. No independent verification available. Reliance on counterparty's records reasonable as matter of law. DDJ Mgmt., 15 N.Y.3d at 154. |

| 4 | Independent damages | FAC ¶ 26. (a) Seven-month delay pursuing claims while relying on representations; (b) IRS audit costs, interest, and penalties from discrepancies between reported and actual income—independently caused by the misrepresentation, not the nonpayment. |

## COUNT III – Rule 9(b) Requirements

| # | Legal Element | FAC Paragraphs Plausibly Alleging Element |
|---|---|---|
| 8 | Why statements are fraudulent | FAC ¶¶ 16, 26. Spreadsheet lists checks PRH's bank cannot verify. No corresponding deposits. PRH admitted it cannot produce underlying checks. PRH cannot use spreadsheet as sword while hiding behind inability to verify. |
| 9 | Strong inference of fraudulent intent | FAC ¶¶ 16, 19, 26. Exclusive control over records; production of unverifiable data in response to payment demand; timing designed to delay claims; continued refusal to produce checks; eleven-year pattern of 1099s for unreceived amounts. |

## COUNT IV – § 7434 FRAUDULENT INFORMATION RETURNS

| # | Legal Element | FAC Paragraphs Plausibly Alleging Element |
|---|---|---|
| 2 | Information return was fraudulent | FAC ¶¶ 17-18, 28. 1099s for 2014-2024 reporting amounts "paid" to Stringer she never received. IRS instructions require reporting amounts actually "paid." Amounts bear no relationship to 15% commission. Box 2 misclassification designed to evade IRS matching. |
| 3 | Willfully issued | FAC ¶¶ 12, 17-18, 28. (a) PRH knew Stringer was agent (corresponded, maintained records, filed 1099s in her name); (b) knew it was not paying reported amounts; (c) eleven-year pattern; (d) Box 2 misclassification. Sophisticated publisher filing sworn returns for amounts never paid acts willfully. Katzman, 660 F.3d at 568. |

## CERTIFICATE OF SERVICE

I, Vickie M. Stringer, hereby certify that on July 27, 2026, a true and complete copy of the foregoing Memorandum of Law in Opposition to Defendant's Motion to Dismiss and the accompanying Responsive Exhibit 1 were served upon Defendant's counsel of record by electronic mail and first-class mail, postage prepaid:

> Matthew Leish, Esq.
> Lucy Hoffman, Esq.
> Klaris Law PLLC
> 161 Water Street, Suite 904
> New York, New York 10038
> matthew.leish@klarislaw.com

Dated: July 27, 2026

/s/ Vickie M. Stringer
Vickie M. Stringer, Plaintiff, Pro Se

**<u>CERTIFICATE OF COMPLIANCE</u>**

Plaintiff certifies that this memorandum complies with the word-count limitations of Local Civil Rule 7.1(c). Excluding the caption, signature block, certificates, and responsive chart, this memorandum contains approximately 5,800 words.

Dated: July 27, 2026

/s/ Vickie M. Stringer

Vickie M. Stringer, Plaintiff, Pro Se